HIGGINS, Justice.
 

 This is a proceeding by claimants, through intervention in an ancillary receivership in the parish of East Baton Rouge, being conducted in accordance with Act No. 227 of the Louisiana Legislature of 1932, to compel the receiver in an ancillary receivership in the parish of Orleans, also brought in accordance with the provisions of Act No. 227 of 1932, to surrender sufficient assets to the receiver at East Baton Rouge, to satisfy their respective claims.
 

 The receiver from New Orleans filed an exception to the jurisdiction of the East Baton Rouge court on the ground that, as the assets were in his possession in New Orleans, under the direction and administration of the civil district court, the East Baton Rouge court was without power or authority to grant the relief sought by the interveners; and, that if they had any claim against the assets, their claims must be asserted in the receivership proceedings in New Orleans.
 

 On the original hearing the trial judge overruled the exception, but, on rehearing, sustained it, and the interveners have appealed.
 

 The record shows that Ruth Hickman, a resident of this state and a judgment creditor of the Public Indemnity Company of Newark, N. J., provoked an ancillary receivership of that company in the district court of East Baton Rouge, in pursuance of Act No. 227 of 1932. This company had previously, on April 17, 1933, been placed in liqui
 
 *163
 
 dation at Its domicile in New Jersey. The company had qualified to transact business in Louisiana under Act No. 58 of 1921 (Ex. Sess.), as amended by Act No. 840 of 1926. On August 7, 1933, the court appointed Hughey B. lingle, as ancillary receiver, and he qualified as such. Mr. Lingle, as receiver, acting under sections 5, 6, ,7, and 8 of Act No.. 227 of 1932, cited the creditors of the company to file their claims in the receivership.
 

 The Public Indemnity Company’s qualifying surety in this state was the Constitution Indemnity Company of Philadelphia, which was also cited to appear in the proceedings.
 

 In the latter part of 1932, there was a merger between the Constitution Indemnity Company, the Lloyds Casualty Company and the Detroit Fidelity & Surety Company and the consolidated company was named the Lloyds Insurance Company of America. The new company took over the assets of the other three companies and assumed their obligations and liabilities.
 

 In August, 1933, the Lloyds Insurance Company of America was likewise placed in liquidation at its domicile in New York City, and thereafter its Louisiana creditors, in pursuance of Act No. 227 of 1932 provoked an ancillary receivership thereof in the civil district court for the parish of Orleans.
 

 On August 28, 1933, Mr. A. E. Blackmar was appointed as ancillary receiver and after qualifying took possession of all of the company’s assets that he secured from the state treasurer. These assets consisted of securities of a par value of $55,000, which the Lloyds Insurance Company of America had deposited with the state treasurer, in order to qualify to do business in Louisiana, as required by the provisions of Act No. 58 of 1921 (Ex. Sess.), amended by Act No. 340 of 1926. A great many of the creditors of this company filed their claims in the receivership case at New Orleans.
 

 In the meantime, the creditors of the Public Indemnity Company filed their claims in the receivership proceedings at East Baton Rouge. Their petitions of intervention cited Mr. Blackmar, the ancillary receiver of Lloyds Insurance Company of America, and sought to compel him to deposit with Mr. Lingle, the receiver at East Baton Rouge, the amount of the qualifying bond of the Public Indemnity Company upon which the Constitution Company was surety, or such amount thereof as might be necessary to pay. the debts of the Public Indemnity Company. Mr. Blackmar, the receiver from New Orleans, then filed the exception to the jurisdiction of the East Baton Rouge court.
 

 There is no doubt that Mr. Blackmar, as receiver, had the right to demand from the state treasurer, and the state treasurer had the right to surrender to him the securities of the Lloyds Insurance Company of America, which was a foreign insurance company that had deposited the securities, in order to qualify to do business in Louisiana. Section 4, Act No. 227 of 1932.
 

 Mr. Blackmar, having been appointed as receiver of the Lloyds Insurance Company of America by the civil district court, was obliged to administer the receivership .proceedings under the direction of the judge of the civil district court. Mr. Blackmar, as receiver, was without authority to pay any claims or to transfer any assets to any one,
 
 *165
 
 without the authorization of the court that appointed him.
 

 In the ease of Godchaux v. Texas & P. Ry. Co., 151 La. 955, 92 So. 398, this court quoted with approval from “High on Receivers,” (3d Bd.) p. 221 et seq., par. 254, the following ruling:
 

 “ ‘A receiver being an officer of the court, acting under its direction, and in all things subject to its authority, it is contrary to the established doctrine of the courts of equity to permit him to be made a party defendant to litigation, unless by consent of the court appointing him. And it is in all cases necessary, that a person desiring to bring suit against a receiver in his official capacity, should first obtain leave of the court by which he was appointed, since the courts will not permit the possession of the receivers to be disturbed by suit or otherwise, without their consent and permission. The rule is established for the protection of receivers against unnecessary and expensive litigation, and in most instances a party aggrieved, may have ample relief by application on motion to the court appointing the receiver. And it is necessary to aver in the complaint or declaration against a receiver, that leave of court has been granted to bring the action, and the absence of such an averment is fatal upon demurrer.’ * * *
 

 “‘The authorities are far from reconcilable upon the question of whether want of leave to bring an action against a receiver is jurisdictional, and therefore, fatal to maintaining the action, or whether it is merely an omission, which will subject the party suing without leave to proceedings for contempt of the court appointing the receiver, but without impairing the jurisdiction of that court to proceed with and determine the cause. The better considered authorities, however, support the proposition that leave to sue the receiver is jurisdictional in its nature, and that its omission is fatal to maintaining the action. And since the want of leave to bring the action goes to the jurisdiction of the court and is not merely error, the question may be raised at any stage of the cause and even upon appeal from a judgment against receiver, and when he has not raised the question in the court below. And upon an application to the court for leave to sue its receiver, the court may determine the. forum in which the action shall be brought. It may, therefore, grant leave to sue the receiver in its own jurisdiction, and may refuse to permit him to be sued in another court. And when the order is made in this form, and the action is brought in the court by which the receiver was appointed, but the plaintiff then files a petition and bond for the removal of the cause to a federal court, it is not error for the former court, of its own motion, to revoke the permission to sue its receiver and to dismiss the action. So when a receiver is appointed by a state court, the refusal of that court to permit a claimant against its receiver to bring an action, said claimant, being, by reason of his citizenship, entitled to sue in a federal court, is not error, it being discretionary with the court to grant leave to sue, or to determine the controversy upon petition in the cause in which the receiver was appointed.’”
 

 In Porter v. Sabin, 149 U. S. 473, 13 S. Ct. 1008, 1010, 37 L. Ed. 815, the Supreme Court of the United States, with reference to this jurisdictional question said:
 

 
 *167
 
 “When a court exercising jurisdiction in equity appoints a receiver of all the property of a corporation, the court assumes the administration of the estate. The possession of the receiver is the possession of the court; and the court itself holds and administers the estate through the receiver, as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it. * * *
 

 “It is for that court, in its discretion, to decide whether it will determine for itself all fclaims of or against the receiver, or will allow them to be litigated elsewhere. It may direct claims in favor of the corporation to be sued on by the receiver in other tribunals, or may leave him to adjust and settle them without suit, as in its judgment may be most beneficial to those interested in the estate. Any claim against the receiver or the corporation the court may permit to be put in suit in another tribunal against the receiver, or may reserve to itself the determination of; and no suit, unless expressly authorized by statute, can be brought .against the receiver without the permission of the court which appointed him.”
 

 It is clear that the creditors of the insurance company have the right to assert their claim aga'inst Mr. Blackmar, as receiver, in the civil district court at New Orleans. Section 7 of Act No. 227 of 1932.
 

 In the case of Cognovich v. Sun Indemnity Company, 176 La. 373, 145 So. 774, 775, the plaintiff had obtained a judgment against the Federal Surety Company and brought suit in the civil district court for the parish of Orleans against the Sun Indemnity Company of New York, as surety on the qualifying bond of the Federal Surety Company, in accordance with the provisions of Act No. 58 of 1921 (Ex. Sess.), as amended by Act No. 310 of 1926. Before the Sun Indemnity Company filed its answer, or before issue was joined, the judge of another division of the ci\il district court for the parish of Orleans appointed a receiver for the Federal Surety Company, under the authority of Act No. 227 of 1932.
 

 The judge of the division of the civil district court in which Cognovich had brought suit against the Sun Indemnity Company, on motion of counsel for the latter, transferred the suit to the division in which the receivership case had been instituted, to be disposed of in the receivership proceedings. Cognovich then sought writs of certiorari and mandamus to correct the alleged illegal transfer of their suit.
 

 In deciding that the complaint of the relator was not well founded, we said:
 

 “Act No. 227 of 1932 was intended for a case like this. The object of the act, as expressed in its title, is to authorize the appointment of receivers for foreign insurance companies that have qualified to do business in this state, and have become insolvent, or have had receivers or liquidators appointed for them elsewhere; to authorize such local receivers to collect all of the assets of such insolvent insurance companies in this state, including deposits with the state treasurer, and to proceed against the surety or sureties on the bond or bonds filed by such insurance companies with the secretary of state, for the privilege of doing business in this state; to authorize such receivers to have determined and ranked all claims against such in
 
 *169
 
 surance companies and the sureties on their bonds; and to provide for process in such cases; and the trial thereof. * * *
 

 “The bond given by the Federal Surety Company, under the provisions of Act No. 58 of 1921 (Ex. Sess.), was not given for the use or benefit of Mr. and Mrs. Louis Cognovich especially, but, according to the exact language of the statute (section 1), the bond was given ‘for the use and benefit of all creditors (of the Federal Surety Company) in the State of Louisiana.’ The act of 1932 provides an appropriate method of procedure for settling with the creditors of an insolvent foreign insurance company. If the relators in this case are entitled to any preference or advantage over any other creditor or creditors of the Federal Surety Company or of the Sun Indemnity Company, by virtue of the judgment obtained by the relators, or otherwise, the preference or-advantage will not be lost or affected by Judge Gleason’s order, relegating the relators’ claim to the receivership proceedings before Judge Boatner.”
 

 The conclusions reached in the foregoing decision are not only legally sound, but are in accord with the equity rule which forbids the dissipation of the assets of an insolvent company in useless and unnecessary litigation.
 

 In the light of the foregoing authorities, it is our opinion that the court at Baton Rouge is without jurisdiction to compel Mr. Black-mar, as receiver, to transfer sufficient assets to pay the claims of the interveners, and that if they have any rights as creditors against the assets held by Mr. Blackmar, they must assert them in the receivership proceedings in the civil district court, unless authorized by that court to sue the receiver in another proceeding.
 

 Some of the claimants also cited Indemnity Insurance Company of North America, which was qualifying surety in this state for Constitution Indemnity Company of Philadelphia, to appear in these proceedings before the court at Baton Rouge. The Indemnity Insurance Company of North America has likewise been cited as such surety for Constitution Indemnity Company of Philadel-' phia, to appear and answer to any claim against it as such surety in the proceedings before the civil district court for the parish of Orleans in which. Mr. A. E. Blackmar was appointed ancillary receiver for Lloyds Insurance Company of America and its affiliated companies, including Constitution Indemnity Company of Philadelphia. The liability of Indemnity Insurance Company of North America as qualifying surety for this last-named company is a part of the assets of the ancillary receivership proceedings in the parish of Orleans. For the same reasons applicable with reference to Mr. Blackmar, we are likewise of the opinion that the court at Baton Rouge is without jurisdiction to try claims against Indemnity Insurance Company of North America as qualifying surety for Constitution Indemnity Company of Philadelphia, but such claims must be asserted in the receivership proceedings in the civil district court for the parish of Orleans. Accordingly, the exception to the jurisdiction of the East Baton Rouge court filed by Indemnity Insurance Company of North America; similar to the exception filed by the receiver, was correctly sustained on rehearing by the trial judge, and the appeal herein, in so far as it concerns the jurisdiction of the court
 
 *171
 
 of East Baton Rouge parish over the claims of interveners against such surety, must be disposed of in the same manner as the question of jurisdiction of such court over Mr. Blaelcmar as receiver of Lloyds Insurance Company of America and its merged companies.
 

 • For the reasons assigned, the judgment appealed from is affirmed.